IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICHELLE CHAMBERLAIN, | No. 4:22-CV-00366 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| RES-CARE, INC., | |
| Defendant. | |

MEMORANDUM OPINION

OCTOBER 11, 2022

Plaintiff Nichelle Chamberlain brings this employment discrimination action against her former employer, Res-Care, Inc., after filing a grievance with the Pennsylvania Human Relations Commission ("PHRC") and the United States Equal Employment Opportunity Commission ("EEOC"). She raises various claims arising out of Res-Care's alleged failures to prevent sexual harassment in the workplace and discriminatory practices. Res-Care now moves to dismiss Chamberlain's Complaint. For the following reasons, Res-Care's Motion to Dismiss will be granted.

I.    BACKGROUND

   A.    Facts

Chamberlain began working for Res-Care in November 2016 as a Residential Advisor and was later promoted to Residential Supervisor.[1] In March 2020, Jeremy

---

[1]   Compl. Doc. 1 ¶¶ 14-15.

Naus, one of Chamberlain's coworkers, began making sexual advances towards her.[2] That month, he wrote a note indicating his attraction to Chamberlain.[3] Later, in April, he told Chamberlain that "she could really rock a pair of blue jeans" and "left a note in her jacket telling her that she was beautiful."[4] Towards the end of April, Chamberlain formally complained to human resources, resulting in Naus's suspension for two weeks.[5]

When Naus returned on May 12, 2020, he resumed his behavior, following Chamberlain to her car as she was leaving work.[6] Aside from the suspension, Res-Care did not otherwise prevent Naus from contacting Chamberlain.[7] Later in May, Chamberlain formally complained about Naus following her to her car.[8]

In October 2020, after being exposed to COVID-19, Chamberlain sent Res-Care a doctor's note that indicated she was "unable to work" because she presented with COVID-19 symptoms.[9] Although Res-Care allowed Chamberlain's coworkers—who were also exposed to COVID-19—to work from home, it did not allow Chamberlain to do so, relying on the doctor's note.[10]

---

[2]   *Id.* ¶ 17.
[3]   *Id.* ¶ 19.
[4]   *Id.* ¶¶ 20-21.
[5]   *Id.* ¶¶ 22-24.
[6]   *Id.* ¶ 25.
[7]   *Id.* ¶ 26.
[8]   *Id.* ¶ 27.
[9]   *See id.* ¶¶ 33-34.
[10]  *Id.* ¶¶ 29-34; October 2 Email Exchange between Chamberlain and Vitaly Karpeshov, Doc 1-1 at 20

Res-Care's refusal required Chamberlain to use her vacation days, over which she complained to Res-Care's human resources department.[11] She argued that the import of her doctor's note was that she could not be around others, not that she could not work at all.[12] Res-Care's human resources department responded that the note stated she could not work at all it would "not read between the lines" and reiterated that she would need to use her vacation time for days missed.[13] Chamberlain resigned from Res-Care on January 29, 2021.[14]

B.   **Procedural History**

In November 2020, Chamberlain filed a questionnaire with the PHRC, alleging that Res-Care failed to prevent Naus's harassment and retaliated against her by refusing to allow her to work from home when it allowed other employees to do so.[15] On December 10, 2021, the PRHC sent her a letter authorizing her to sue Res-Care.[16] She then requested, and later received, a similar letter from the EEOC.[17] After receiving those letters, Chamberlain filed the instant Complaint. She alleges that Res-Care subjected her to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*. ("Title VII") (Count I);

---

[11]  *See* Compl. Doc. 1 ¶ 42; October 6 Email Exchange between Chamberlain and Cliff Miller, Doc. 1-1 at 26.
[12]  Compl. Doc. 1 ¶¶ 45-46; October 8 Email Exchange between Chamberlain and Vitaly Karpeshov, Doc. 1-1 at 28.
[13]  Compl. Doc. 1 ¶¶ 47-55; October 9 Email Exchange between Chamberlain and Matthew Hagan, Doc. 1-1 at 29-37.
[14]  Compl. Doc. 1 ¶ 57.
[15]  Compl. Doc. 1 ¶ 1; Employment Discrimination Questionnaire, Doc. 1-1 at 1-7.
[16]  Compl. Doc. 1 ¶ 2; PHRC Right-to-Sue Ltr., Doc 1-1 at 8.
[17]  Compl. Doc. 1 ¶¶ 3-4; EEOC Right-to-Sue Ltr., Doc. 1-1 at 9.

Res-Care subjected her to a hostile work environment in violation of the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* ("PHRA") (Count II), and Res-Care retaliated against her in violation of the PHRA (Count III).[18] She seeks compensatory and punitive damages, as well as costs and attorneys' fees.[19]

Res-Care now moves to dismiss Chamberlain's Complaint under Federal Rule of Civil Procedure 12(b)(6).[20] Res-Care's Motion to Dismiss is now fully briefed and ripe for disposition.

## II. DISCUSSION

### A. Standard of Review

Under Rule 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[21] and *Ashcroft v. Iqbal*,[22] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[23]

The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements

---

[18] Compl. Doc. 1 ¶¶ 70-87.
[19] *Id.* at 14.
[20] Def's Mot. to Dismiss, Doc. 5.
[21] 550 U.S. 544 (2007).
[22] 556 U.S. 662 (2009).
[23] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[24]

### B. Hostile Work Environment and Constructive Discharge Claims (Counts I and II)

In Counts I (Title VII claim) and II (PHRA claim), Chamberlain alleges that Res-Care subjected her to a hostile work environment by failing to prevent Naus's sexual harassment, ultimately resulting in her constructive discharge.[25] Although Chamberlain raises both constructive discharge and hostile work environment claims in each Count, they are separate causes of action. But as she raises the same claims under both federal and state law, the Court will discuss Counts I and II jointly with respect to each claim.

Res-Care argues that (1) Chamberlain failed to administratively exhaust her claim for constructive discharge; (2) Chamberlain fails to state a claim for constructive discharge; and (3) Chamberlain fails to state a claim for hostile work environment.[26]

---

[24] *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).
[25] *See id.* ¶¶ 60-82.
[26] Def's Br. Doc. 6 at 4-8.

### 1. Constructive Discharge

Res-Care first argues that Chamberlain failed to exhaust all administrative remedies because her filings with the PHRC and EEOC do not encompass her claim of constructive discharge. Assuming Chamberlain's filing does encompass constructive discharge, Res-Care argues that she failed to adequately plead constructive discharge. Chamberlain asserts that she has fully exhausted all administrative remedies available to her.

Generally, "[w]here discriminatory actions continue after the filing of an EEOC complaint, . . . the purposes of the statutory scheme are not furthered by requiring the victim to file additional EEOC complaints and re-starting the 180 day waiting period."[27] However, the continuing discriminatory acts complained of must be "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom."[28] The focus is the "gravamen of the [plaintiff's] complaint," rather than what may be uncovered by a subsequent investigation.[29]

"The purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court."[30] Once a complaint is filed, however, "the parameters of the civil action in the district court are defined by the scope of the EEOC

---

[27] *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984).
[28] *Id.*
[29] *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996).
[30] *Id.*

investigation which can reasonably be expected to grow out of the charge of discrimination."[31]

Chamberlain filed with the PHRC before she resigned from her position on January 29, 2021.[32] At that point, she could not have alleged a constructive discharge as that claim requires the plaintiff to have "actually resigned," whether by coercion or due to a sufficiently hostile work environment.[33] None of the facts raised in the PHRC charge suggest that Chamberlain was planning on resigning or would do so if conditions did not improve. She only described Naus's harassment and Res-Care's refusal to let her work from home. Therefore, the Court concludes that constructive discharge was not the "gravamen" of Chamberlain's filing with the PHRC.[34] Accordingly, her constructive discharge claim cannot be said to have "grow[n] out of [her] charge of discrimination."[35]

Furthermore, Chamberlain's constructive discharge claim is not adequately pled. To show that she was constructively discharged, Chamberlain must show "that

---

[31] *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir.1976) (citations omitted).
[32] *See* Compl. Doc. 1 ¶ 57; PHRC Employment Discrimination Questionnaire, Doc. 1-1 at 1-7 (filed October 30, 2020).
[33] *Green v. Brennan*, 578 U.S. 547, 555 (2016) (citing *Pennsylvania State Police v. Suders*, 542 U.S. 129, 148 (2004)).
[34] *Antol*, 82 F.3d at 1296. It is unclear whether the PHRC continued to investigate Chamberlain's claims after its December 10, 2021 letter. *See* PHRC Right-to-Sue Ltr., Doc 1-1 at 8. By contrast, the EEOC explained that it was terminating its investigation before Chamberlain resigned. *See* EEOC Right-to-Sue Ltr., Doc. 1-1 at 9. However, even assuming the PHRC continued its investigation and would have uncovered Chamberlain's resignation, her constructive discharge claim cannot grow out of the facts detailed in the questionnaire she filled out.
[35] *Ostapowicz*, 541 F.2d at 398-99.

[s]he was discriminated against by h[er] employer to the point where a reasonable person in h[er] position would have felt compelled to resign" and that she actually resigned.[36]

The Third Circuit has emphasized that the standard is an objective one and provided factors to guide the Court, "including whether the employee was threatened with discharge, encouraged to resign, demoted, subject to reduced pay or benefits, involuntarily transferred to a less desirable position, subject to altered job responsibilities, or given unsatisfactory job evaluations."[37] Here, Chamberlain has not alleged that any of the factors apply to her, save one. Her job conditions were arguably altered in that she was not allowed to work from home when others were.[38]

Furthermore, Chamberlain does not factually connect her inability to work from home with Naus's harassment. She alleges no further contact with Naus after the May 12, 2020 incident and her consequent formal complaint on May 13, 2020. But her inability to work from home did not begin until August 2020. Without more evidence—which Chamberlain does not provide—the five months in between those two actions is too long a time for the timing to "be unusually suggestive of retaliatory

---

[36] *Green*, 578 U.S. at 555-56 (quoting *Suders*, 542 U.S. at 141).
[37] *Mandel*, 706 F.3d at 170 (citing *Colwell v. Rite Aid Corp.,* 602 F.3d 495, 503 (3d Cir. 2010)).
[38] However, Chamberlain has not alleged that any of the employees Res-Care allowed to work from home were similarly situated. In fact, the evidence she submitted with her Complaint suggests that she had responsibilities that required her presence at the Res-Care facility. *See* October 9 Email Exchange between Chamberlain and Matthew Hagan, Doc. 1-1 at 31-32.

motive."[39] Therefore, Counts I and II will be dismissed with prejudice insofar as they raise the theory of constructive discharge.[40]

### 2. Hostile Work Environment

To recover for a hostile work environment, Chamberlain "must establish that: (1) [s]he suffered intentional discrimination because of [her] [sex]; (2) the discrimination was pervasive and regular; (3) it detrimentally affected [her]; (4) it would have detrimentally affected a reasonable person of the same protected class in [her] position; and (5) there is a basis for vicarious liability."[41]

"In assessing whether conduct is severe or pervasive, courts consider the totality of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

---

[39] *Williams v. Philadelphia Hous. Auth. Police Dept.*, 380 F.3d 751, 760 (3d Cir. 2004) (concluding that two-month period between protected act and termination is insufficient to indicate retaliatory animus), *abrogated on other grounds by statute*, P.L. 110-325 § 6, 122 Stat. 3553, 3558 (2008). In her Complaint, Chamberlain states that "[she] was put on leave from work for a short time during her employment with [Res-Care]." Doc. 1 ¶ 66. She does not identify when that occurred or whether Res-Care forced her to take leave, she felt compelled to take leave, or she voluntarily requested and was granted leave. Therefore, the Court will not consider this as a potential adverse employment action.

[40] 42 U.S.C. § 2000e-5(e) requires a complaint to be filed with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred" or "within three hundred days after the alleged unlawful employment practice occurred," if the complainant has filed with a state or local agency before filing with the EEOC. Likewise, 43 P.S. § 959(h) requires a complaint to be filed with the PHRC "within one hundred eighty days after the alleged act of discrimination." As both those periods have long passed, both the EEOC and the PHRC would consider Chamberlain's constructive discharge claims time-barred.

[41] *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001). The Court notes that a constructive discharge claim requires "a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 317 (3d Cir. 2006) (quoting *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992), *aff'd*, 511 U.S. 244). Therefore, having failed to adequately support her constructive discharge claim, it is unlikely that Chamberlain can support her hostile work environment claim. However, the Court will discuss the sufficiency of her claim for completeness.

9

utterance; and whether it unreasonably interferes with the employee's work performance.'"[42] Accordingly, courts should "filter out 'simple teasing, offhand comments, and isolated incidents.'"[43] A plaintiff's "required proximity" to someone who has harassed them before may be a factor in the hostile work environment analysis, but it is not dispositive, especially when the harasser's presence is "occasional or sporadic."[44] In sum, "Title VII does not create 'a general civility code for the American workplace.'"[45]

Chamberlain cites three specific instances of Naus's harassment: the March 2020 note, the April 2020 comment and note, and the May 2020 incident when Naus followed Chamberlain to her car. Beyond these instances, Chamberlain also takes issue with being forced to be in Naus's presence after his return to Res-Care in May 2020.

These instances and Naus's general presence at Res-Care are insufficient to demonstrate a hostile work environment. The April and May 2020 instances are at best offensive but infrequent comments. The May 2020 following-to-the-car incident is certainly more threatening, but it is also isolated. These events cannot be said to constitute pervasive harassment or the unreasonable interference with Chamberlain's responsibilities at Res-Care that a meritorious hostile work

---

[42] *Kokinchak v. Postmaster Gen. of the U.S.*, 677 F. App'x 764, 767 (3d Cir. 2017) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993)).
[43] *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).
[44] *Id.* at 767-68.
[45] *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).

environment claim requires. And, as noted above, Chamberlain does not allege a single instance of contact with Naus after the May 2020 incident. Nor does she allege that any of her job responsibilities required her to work in close proximity with Naus. Accordingly, his occasional presence does not rise to a level that would support a hostile work environment claim. Accordingly, Counts I and II are dismissed.

### C. Retaliation (Count III)

Chamberlain last raises a state-law claim for retaliation (Count III). Res-Care argues that she fails to state a retaliation claim, largely advancing the same arguments it raised in response to Counts I and II. To plead a sufficient retaliation claim, Chamberlain must allege: (1) she engaged in protected activity; (2) Res-Care took an adverse action against her; and (3) a causal connection exists between her protected activity and the adverse employment action.[46] As noted above, there is a five-month gap between Chamberlain's last complaint about Naus and Res-Care's refusal to allow her to work from home, which is the earliest cognizable adverse employment action raised in the Complaint. That gap is too long to raise the inference of a causal link between the two events and Chamberlain has not alleged any additional facts to suggest such a link. Therefore, Count III is dismissed as well.

---

[46] *Moore v. City of Philadelphia*, 461 F.3d. 331, 340-41 (3d. Cir. 2006).

## III.  CONCLUSION

For the foregoing reasons, Res-Care's Motion to Dismiss is granted.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge
